UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AI JIANG,

     Petitioner,

  - against -

ROLAND LARKIN,

     Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April **2𝟗**, 2016

**MEMORANDUM
OPINION & ORDER**

12 Civ. 3869 (PGG) (SN)

PAUL G. GARDEPHE, U.S.D.J.:

   Pro se Petitioner Ai Jiang, who is currently imprisoned by the State of New York

on assault and attempted murder convictions, petitions for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. (Petition ("Pet.") (Dkt. No. 1))  Magistrate Judge Sarah Netburn has issued a

Report and Recommendation ("R & R") recommending that Jiang's petition be denied.  (Dkt.

No. 22)  Jiang filed timely objections to the R & R.  (Objections to Magistrate's R & R

("Petitioner's Objections") (Dkt. No. 24))  For the reasons stated below, Jiang's petition will be

denied.

## BACKGROUND

   The relevant facts and procedural history of this action are set forth in detail in

Judge Netburn's R & R and are summarized below.

## I. PRETRIAL PROCEEDINGS AND TRIAL

   Jiang was initially charged in two separate indictments for the February 12, 2004

assault and attempted murder of Zheng Chao Pan ("Zheng") and Zhong Hai Pan ("Zhong") (the

"February Incident"), and the November 3, 2004 assault and attempted murder of Weng Yu Tuan

("Weng") (the "November Incident").  (R & R (Dkt. No. 22) at 4)

As detailed in Judge Netburn's R & R, the February Incident began when Zheng, the owner of a Chinatown bus company, received a phone call on February 10, 2004, from an unidentified caller warning him to "prepare [his] coffin." (Id. at 2 (quoting Trial Transcript ("Tr.") (Dkt. Nos. 11, 17) 117)) Zheng testified that Jiang, another man named Ai Jiang Yong ("Yong"), and an unidentified man appeared at his business the next day and told him to "get his coffin ready." (Id.) On the evening of February 12, 2004, a group that included Jiang and Yong viciously attacked Zheng in front of 88 East Broadway in Manhattan, beating him with a hammer and metal rod and stabbing him with a knife. (Id. (citing Tr. 121-23, 145-46)) Zheng's friend Zhong was also struck and stabbed when he attempted to come to Zheng's aid. (Id. (citing Tr. 77-78)) Prior to Jiang's trial, Yong pled guilty to second-degree assault in connection with the February Incident. (Id. at 3 (citing Tr. 312))

At trial, Jiang testified in his own defense. He maintained that he was not present at the February Incident, and had instead spent the evening at home after picking up his daughter from school at 3:00 p.m. (Id. at 3 (citing Tr. 337-38)) Jiang further testified that he did not know either Zheng or Zhong. (Id. (citing Tr. 339-41)) Yong's wife, Wu Lan Yum ("Ms. Wu"), testified that she had witnessed the attack and Jiang was not present. (Tr. 303)

The November Incident occurred at the Fuzhou Lan Chi Hai Yu Association, a social club located at 43 Market Street in Manhattan. (R & R (Dkt. No. 22) at 3) The People presented evidence that Jiang arrived at the club at about 10:00 p.m. armed with a knife and a cleaver (Id. (citing Tr. 221-22, 236, 256-57, 274-77, 280)), and that Jiang stabbed Weng thirteen times following an altercation. (Id. (citing Tr. 221-22, 236, 237-38, 256-52, 280)) Jiang was also injured during this incident, and he testified that Weng was the aggressor and that Jiang had acted in self-defense. (Id. (citing Tr. 347-48, 351-53, 356-57, 375-77, 380-82)) Jiang and a

2

defense witness also testified that Jiang had been drinking heavily on the night of the attack. (Id. at 36 (citing Tr. 317-19, 349, 357, 377))

Jiang was arrested at a Brooklyn hospital after receiving treatment for injuries he sustained during the November Incident. (Id. at 4 (citing Tr. 155-56)) In February 2005, he was placed in a police line-up and separately identified by Zheng and Zhong as having participated in the February Incident. (Id. (citing Tr. 51-53, 85-86, 130))

Attorney Verena C. Powell was assigned to represent Jiang. (Declaration of Priscilla Steward in Opposition ("Steward Decl.") (Dkt. No. 9), Ex. B (Affirmation of Verena C. Powell ("Powell Aff.")) ¶ 1)

Following Jiang's arraignment, the People successfully moved – over Jiang's objection – for the two indictments to be consolidated for trial. (R & R (Dkt. No. 22) at 4)  On February 21, 2006, the case proceeded to trial before New York Supreme Court Justice William Wetzel and a jury. (Tr. 5)  On February 27, 2006, the jury convicted Jiang of attempted second-degree murder, first-degree gang assault, and first-degree assault for the attack on Zheng; second-degree assault for the attack on Zhong; and first-degree assault for the attack on Weng. (R & R (Dkt. No. 22) at 4; Tr. 495-96)  The jury acquitted Jiang of first-degree gang assault and attempted second-degree murder for the attack on Zhong, and also acquitted him of attempted second-degree murder for the attack on Weng. (Tr. 495-96)

## II.    POST-TRIAL PROCEEDINGS

### A.    Motion to Set Aside the Verdict

Prior to sentencing, Jiang – now represented by a different attorney, Joel S. Cohen – moved to set aside the verdict pursuant to N.Y. Crim. Proc. L. ("CPL") § 330.30 on the ground that Powell, his trial lawyer, had been constitutionally ineffective. (Steward Decl. (Dkt. No. 9),

3

Ex. A (Petitioner's CPL § 330.30 Motion to Set Aside the Verdict)) Jiang claimed that Powell

had failed to: (1) conduct a sufficient investigation, (2) interview or call exculpatory witnesses,

(3) warn him of the dangers of testifying, and (4) adequately prepare him to testify. (Id. at 15-

18) Jiang asserted that Powell "met with him only three times," failed to investigate "a number

of witnesses who could [have] provide[d] evidence that was favorable to him," and – most

critically – "never sought to interview . . . and never sought to conditionally preserve" the

testimony of Yong, Jiang's alleged accomplice in the February Incident. (Id. at 6-9) Jiang

claims that Yong was "prepared to testify that [] Jiang was not involved in the 'bus company'

stabbing, and that in fact [Yong's] cousin had been responsible for that incident and had fled to

China." (Id. at 8-9)

      Cohen, Jiang's new lawyer, submitted an affidavit in support of the CPL § 330.30

motion containing the following assertions:

7.      . . . When Mr. Jiang told Ms. Powell that there were a number of witnesses
who could provide exculpatory evidence that he wanted her to call, she
told him, in substance, that he should not worry about the case, that it
would be okay, and that he would only be sent to immigration. . . .

8.      Mr. Jiang has told me, as he indicated he told Ms. Powell, that the
witnesses are Qiu Xin Qin and Xue Dexing, who were eyewitnesses to the
"bus company" stabbing, and Chen Hua and Gong Ching Yu, witnesses to
the Market Street stabbing. He offered to provide their addresses to Ms.
Powell, as well as that of a neighbor who could testify that [Jiang] was at
home at the time of the 'bus company' stabbing.[] She never took the
addresses, apparently never contacted the witnesses and did not subpoena
them to testify at trial. . . .

     . . . .

10.     Chen Feng Ming, who is Mr. Jiang's wife, has advised me that she went to
Ms. Powell's office on several occasions. The first such meeting was
about six months after Mr. Jiang's arrest, the last about a month before
trial. At each meeting Ms. Chen told Ms. Powell that there were five
witnesses that could provide evidence that would help her husband. . . .

4

11.     The undersigned has interviewed a number of defense witnesses. Two of them testified at Mr. Jiang's trial. One such individual is Wu Lan Yum. Ms. Wu met with Ms. Powell and advised her that her husband, Ai Jiang Yong, had pleaded guilty [] in connection with one of the offenses the defendant was charged with, had served a short jail sentence and was in immigration custody <u>awaiting imminent deportation</u>. She further advised that her husband was willing to provide exculpatory testimony on Mr. Jiang's behalf, but that he would soon be deported. This meeting occurred in or around October, 2005.

12.     Ai Jiang Yong was deported to the People's Republic of China in December of 2005. Mr. Jiang's counsel never interviewed him and never made arrangements to conduct a conditional examination when he was available. (See Affidavit of Wu Lan Yum, annexed as Exhibit D).

(Steward Decl. (Dkt. No. 9), Ex. A (Affidavit of Joel S. Cohen ("Cohen Aff.")) ¶¶ 7- 8, 10-12

(emphasis in original))

In addition to his own affidavit, Cohen submitted affidavits from Qiu Xin Qin,

Xue Dexing, Cheng Feng Ming, and Wu Lan Yum.[1]  (Id., Exs. B-D to Cohen Aff.)  Ms. Wu's

affidavit states that

[d]uring a meeting with Ms. Powell I told her that my husband Ai Jiang Yong was present during the incident on February 12, 2004 near the 888 mall. I told her he had pleaded guilty in connection with this incident. I also told her in around October of 2005 that he was willing to testify on behalf of Ai Jiang, but that he was in Immigration custody and would soon be deported to China.

(Id., Ex. D to Cohen Aff. (Affidavit of Wu Lan Yum) ¶ 2)

In response to Jiang's motion, the People submitted an affirmation from Powell,

which states the following:

8.     It was through my conversations with Jiang that I discovered that another individual with the same name had previously been arrested for the

---

[1] It appears that Jiang also submitted his own affidavit in support of his § 330.30 Motion. (See Steward Decl. (Dkt. No. 9), Ex. F (Respondent's direct appeal brief) at 76 ("[E]ven though counsel claimed that his client gave Powell names and addresses of potential witnesses (Defendant's 330.30 Motion: ¶ 8), defendant only said that he told Powell that 'there were several witnesses who could help [him]' (Defendant's Affidavit: ¶4).")) This affidavit has not been submitted to this Court.

February 200[4] assaults. Additionally, Jiang told me there was a witness, Ms. Wu. However, he did not provide me with her number.

9.      Jiang did, however, provide[] me with the name of the defense attorney on that case, Hugh Mo, Esq. I spoke with Mr. Mo on June 6, 2005, about the other 'Ai Jiang'. Mr. Mo informed me that the other 'Ai Jiang' had pled guilty to an assault and was deported. . . .

. . . .

12.     Ms. Chen came to my office on numerous dates. . . . She did inform me she knew of the witnesses of which Jiang spoke and stated she could bring them to my office. Again, she stated she needed time to contact them, and could not provide me with telephone numbers for any of them. . . .

. . . .

14.     On Monday October 24, 2005, [Ms. Chen] brought Wu Lan Yum [Ms. Wu] . . . to my office. . . .

. . . .

16.     Ms. Wu told me that she was present during the altercation of February 2005, and explained that her husband, also named Ai Jiang, was the initial victim. She denied seeing the defendant at the location. Ms. Wu also told me that her husband had pled guilty to the same charges that Jiang now faced. She believed that her husband's attorney, Mr. Hugh Mo, Esq., did not defend him well. Ms. Wu told me that her husband was deported. At no time did she tell me that Ai Jiang Yong was awaiting deportation. . . .

. . . .

20.     Eventually, Jiang told me of the events of November 200[4]. He said that he had witnesses who could verify his version of the events of that night. Jiang stated he was in the company of several acquaintances; some were referred to by nickname, when he was attacked by the club's owner. When we requested the names and means of contacting them, Jiang replied that he would provide the information at a later date. This information was not forthcoming. . . .

. . . .

23.     Between October 2005 and late January 2006, I had no contact with Ms. Chen. Nor did Jiang provide me with the names or telephone numbers of additional witnesses. . . .

. . . .

28.     As Jiang was identified in a lineup by both complainants of the February 200[4] altercation, as well as the fact that he was acquainted with the complainant of the November 200[4] altercation[,] I believed his conviction on one if not all of the charges was inevitable. Ai Jiang did not want to accept my counsel. In failing to provide me with the names and telephone numbers of people that he knew could testify in his defense, not strangers, he hampered his defense. In refusing to acknowledge the seriousness of his crimes[,] Jiang has destroyed his future and that of his family.

(Steward Decl. (Dkt. No. 9), Ex. B (Powell Aff.) at ¶¶ 8-9, 12, 14, 16, 20, 23, 28)

In a reply affidavit, Cohen states:

6.      . . . . Ms. Powell asserts that she interviewed Ms. Wu on October 24, 2005, (Paragraph 14) and that Ms. Wu told her that her husband had already been deported. (Paragraph 16). This is not possible, as Ms. Wu's husband was not deported until December[] 2005. Ms. Wu has advised me, as she asserted in her Affidavit, that she told Ms. Powell that her husband was in Immigration custody awaiting deportation, and that she did not know when the deportation would occur. . . .

. . . .

8.      Ms. Powell asserted under oath, in Paragraph 9 of her Affirmation[,] that she was advised by the other Ai Jiang's attorney, Hugh Mo, Esq. that his client had been deported. Sadly, this is flatly and overwhelmingly contradicted by notes in the file she turned over to me reflecting a conversation with Mr. Mo that says: "6/6. Hugh Mo, Esq. 212-385-1500/ 212-385-1870 (F) P.G. 120.05 & T.S. Immigration hold." Also in the file are documents faxed from Mr. Mo to Ms. Powell on June 7, 2005 including the Indictment and the copies of other papers from the Court's file. Thus, her assertions that she was told both by attorney Mo and Ms. Wu that the other Ai Jiang had been deported lack veracity.

9.      I know Mr. Mo and I am familiar with his telephone and fax numbers; they are the numbers in Ms. Powell's notes. I am assuming that "P.G. 120.05 & T.S.["] meant that the other Mr. Jiang pled guilty to Assault in the Second Degree and was sentenced to time served. Further, I am assuming that "Immigration hold" means that the Immigration service had lodged a detainer against Mr. Jiang.

(Steward Decl. (Dkt. No. 9), Ex. C (Reply Affidavit of Joel S. Cohen) at ¶¶ 6, 8-9 (emphasis in original)) Cohen did not attach Powell's handwritten notes or the faxed documents from attorney Mo to either of his affidavits.

The trial court declined to hold a hearing on Jiang's motion. Instead, in a June 29, 2006 opinion, Justice Wetzel denied Jiang's CPL § 330.30 motion in its entirety, concluding that it "'border[ed] on the frivolous, and [was] bereft of any credible assertions that raise[d] bona fide issues of fact or law.'" (Steward Decl. (Dkt. No. 9), Ex. D (Order denying CPL § 330.30 motion) at 2) Justice Wetzel found that Powell had "provided a detailed report of her investigation efforts and meetings with witnesses which completely refutes the defendant's assertions to the contrary."[2] (Id. at 3) Justice Wetzel went on to state:

> The court finds Ms. Powell's affidavit to be fully credible, and based upon that affidavit, as well as this court's own observations as the presiding judge at trial, rejects the defendant's assertions and concludes that Ms. Powell discharged her obligation with skill, zeal and honor. There is not a scintilla of credible evidence that she was anything but effective.

(Id. at 4) Defendant did not seek leave to appeal the denial of his CPL § 330.30 motion, and on July 31, 2006, the trial court sentenced Jiang to concurrent fifteen-year prison terms, and to five years of post-release supervision. (R & R (Dkt. No. 22) at 5)

## B. Direct Appeal

Jiang appealed his conviction to the Appellate Division, First Department.

(Steward Decl. (Dkt. No. 9), Ex. E (Petitioner's direct appeal brief)) In his appeal, Jiang asserts five grounds for overturning his conviction: (1) the two indictments were improperly joined and the trial court erred in not instructing the jury to consider the February Incident and November

---

[2] Justice Wetzel did not specifically address Powell's alleged failure to interview Yong or her assertions that both Yong's wife and Yong's attorney had informed Powell that Yong had been deported.

8

Incident separately; (2) his trial counsel was ineffective; (3) the prosecutor committed misconduct in making a propensity argument and in eliciting bolstering testimony concerning a prior witness identification; (4) the trial court erred in denying Jiang's motion to set aside the verdict without holding a hearing; and (5) cumulative errors warrant discretionary reversal in the "interests of justice." (Id. at 3)

In support of his ineffective assistance of counsel claim, Jiang repeated the arguments made in his CPL § 330.30 motion. According to Jiang, "[e]ach of these grounds standing alone would have independently warranted vacatur, or at the VERY LEAST required that a hearing be held; collectively they cried out for it." (Id. at 14 (emphasis in original)) Jiang once again faulted Powell for not interviewing Yong. Jiang complained that the trial court "did not even address Ms. Powell's failure to interview this witness or to seek to conditionally preserve his testimony in the event he became unavailable for trial." (Id. at 17)

In opposing Jiang's appeal, the People argued that

> [s]ince defendant's CPL [§] 330.30 motion relied entirely on matters outside the record, the court was correct to deny defendant's motion without a hearing for that reason alone. CPL [§] 330.40(2)(e)(i); People v. Wolf, 98 N.Y.2d 105, 119 (2002); People v. Herrington, 194 A.D.2d 379, 380 (1st Dept. 1993). Moreover, this Court may consider on direct appeal only matters contained in the record below, see, e.g., People v. Cowell, 11 A.D.3d 292 (1st Dept. 2004), and, since the allegations in defendant's motion and supporting affidavits were not properly before the trial judge, they are not part of the appellate record and cannot serve as a basis for reversal of his conviction. Should defendant wish to pursue the claims raised in his CPL [§] 330.30 motion as a basis for reversal, the proper vehicle would be a motion pursuant to CPL [§] 440.10.

(Steward Decl. (Dkt. No. 9), Ex. F (Respondent's direct appeal brief) at 65-66)

The People also noted that

> although defendant's reply papers pointed to a shorthand notation in Powell's files that defendant interpreted as compelling proof that Powell knew on June 6th that Ai Jiang Yong had not yet been deported, defendant did not file those notes as a supporting exhibit (Defendant's Reply [Affidavit]: ¶¶ 7-9). Since those notes

9

are not part of the record on appeal, there is no way to assess the validity of defendant's interpretation, just as there was no way for Justice Wetzel to do so.

(Id. at 83-84)

In response, Jiang asserted that "Respondent should be estopped" from arguing that Jiang's § 330.30 motion improperly relied on matters outside the record, because Respondent had "failed to raise this objection in the Court below." (Steward Decl. (Dkt. No. 9), Ex. G (Petitioner's direct appeal reply brief) at 17) Alternatively, Jiang moved to enlarge the record to include Powell's June 6, 2005 handwritten notes. (Id. at 17 n.2)

In addition to the arguments previously raised in his CPL § 330.30 motion, Jiang argued on direct appeal that Powell's performance was deficient because she "repeated[ly] fail[ed] to object to improper questions or to move to strike blatantly improper and prejudicial answers, or to make mistrial motions, running the risk of failing to preserve these issues for appellate review." (Steward Decl. (Dkt. No. 9), Ex. E (Petitioner's direct appeal brief) at 18) Jiang cited "[t]wo glaring examples" in the prosecutor's opening statement. (Id.) The first was the prosecutor's assertion that "'[t]he evidence will show you that when Ai Jiang does not get what he wants, he stabs people, that is why we are [all] here today.'" (Id. (quoting Tr. 11)) Jiang contended that this statement should have been objected to because it amounted to an improper propensity argument. (Id.) Jiang also complained about his lawyer's failure to object to the following statement in the prosecutor's opening: "'Now the Police believe this Ai Jiang may have been related to the case at 88 East Broadway nine months earlier, so in February [of] 2005[] after this defendant's injuries fully healed, this defendant was placed in[to] a line-up.'" (Id. at 19 (quoting Tr. 23-24 (emphasis in Petitioner's brief))) According to Jiang, trial counsel should have objected and moved for a mistrial because the statement constituted "egregiously

10

improper prosecutorial bolstering . . . and also because the prosecutor made himself an unsworn witness. . . ."  (Id.)

Jiang further claimed that trial counsel was ineffective in failing to object to the following testimony from New York City Police ("NYPD") Detectives Simon Chan and Andrew Oliver:

Detective Chan

Q.      Can you describe for the Court the circumstances that led to the arrest of this defendant?

A.      The subject was identified through a line-up and subsequently arrested the same day.

                    *        *        *        *

Q.      How did you learn this person was in custody?

A.      I received a call at home from my Lieutenant stating that there was an arrest[] made from Market Street and the weapons used were similar to the weapons of my case and it so happens the subject arrested had the same name as the subject in my case.

Detective Oliver

Q.      Based on this conversation that you had with Mr. Zhou [the owner of the Fuzhou Lan Chi Hai Yu Association], what did you do?

A.      Mr. Zhou had informed me that the person who committed the stabbing that night, he knew where he lived, and he knew his name; and he told me that his name was Ai Jiang, and he told me that he knew the house that he lived in in Brooklyn. He didn't know the numeric address, but he knew it by sight and could point out where the perpetrator lived.

(Id. at 19-20 (quoting Tr. 48-49, 152-53))  Jiang argued that this testimony constituted "patently improper instances of bolstering" to which his trial counsel should have objected.  (Id. at 20)

On May 14, 2009, a unanimous panel of the First Department, Appellate Division, affirmed Jiang's conviction. People v. Ai Jiang, 62 A.D.3d 515, 515 (1st Dept. 2009). The First Department found that the trial court had "properly exercised its discretion by joining

11

defendant's indictments relating to separate incidents, since the charges were legally similar," and that Jiang "ha[d] not demonstrated any substantial likelihood that the jury was unable to consider the proof as to each of the charges separately, or that he had important testimony to give in one case and a genuine need to refrain from testifying in the other." Id. (citations omitted). The First Department also rejected Jiang's complaints about the prosecutor's alleged misconduct as unpreserved, and declined to review those claims in the interest of justice. Id. As an alternative holding, the First Department found that any misconduct committed during the prosecutor's opening statement was harmless. Id.

With respect to Jiang's ineffective assistance of counsel arguments, the First Department found that "[t]o the extent the record permit[s] review, . . . defendant received effective assistance under the state and federal standards." Id. at 515-16. The court concluded that Jiang was not prejudiced by trial counsel's failure to raise certain objections, because it did not "affect[] the outcome of the case." Id. at 516. The court found that Jiang's remaining ineffective assistance of counsel arguments were "unreviewable on direct appeal because they involve matters outside the record." Id. (citations omitted). The court explained that while Jiang "raised these claims in a presentence motion to set aside the verdict pursuant to CPL [§] 330.30(1), that motion was procedurally defective because such a motion is limited to grounds appearing in the record." Id. (citation omitted). The court noted that "[t]o the extent the motion could be deemed a de facto or premature motion to vacate judgment pursuant to CPL [§] 440.10, the issues raised in the motion are unreviewable since defendant failed to obtain permission from this Court to appeal." Id. (citations omitted).

"As an alternative holding," the First Department rejected Jiang's ineffective assistance of counsel claim "on the merits," because he

12

did not establish a basis for an evidentiary hearing. Defendant's factual allegations are supported by his motion counsel's affirmation rather than by witnesses with personal knowledge, or are supported only by defendant's affidavit. Furthermore, these claims are contradicted by defendant's trial counsel's detailed affirmation, the record of the trial and pretrial proceedings, and the court's own recollection.

Id. The First Department also rejected Jiang's motion to enlarge the record. Id. On February 22, 2010, the Court of Appeals denied Jiang leave to appeal. People v. Ai Jiang, 14 N.Y.3d 769 (2010).

## C.    Writ of Error *Coram Nobis*

On December 3, 2010, Jiang applied for a writ of error coram nobis with the First Department, contending that his appellate counsel had been ineffective for failing to argue on direct appeal that (1) trial counsel was ineffective for not requesting a jury instruction on intoxication, and (2) the trial court erred in refusing to instruct the jury on Jiang's alibi defense. (Steward Decl. (Dkt. No. 9), Ex. K (Coram nobis petition) at 4) On August 4, 2011, the First Department denied Jiang's application without opinion. (Steward Decl. (Dkt. No. 9), Ex. M (Order denying coram nobis petition)) On November 28, 2011, the Court of Appeals denied Jiang leave to appeal. (Steward Decl. (Dkt. No. 9), Ex. P (Order denying leave to appeal))

## D.    CPL §§ 440.10 and 440.20 Motions to
## Vacate the Conviction and Set Aside the Sentence

Jiang next filed a pro se motion pursuant to CPL §§ 440.10 and 440.20, seeking to vacate his conviction and set aside his sentence on the grounds that (1) his trial lawyer was constitutionally ineffective, because she failed to investigate the availability of a witness or seek a jury instruction on intoxication; and (2) he was denied equal protection of the law because he received a less favorable plea offer than his accomplice. (Steward Decl. (Dkt. No. 9), Ex. Q (CPL § 440.10 motion) at 4, 9-10) In support of the first claim, Jiang submitted the affidavit of Yong's wife, Ms. Wu, together with the fax from attorney Hugh Mo and Powell's handwritten

13

note that Yong had an "immigration hold." (Id. at 14)  Jiang claimed that this evidence established that "Powell . . . submitted a perjured affidavit to th[e] Court" and that "if Powell had interviewed Yong during the six-month period before he was deported, Yong would have testified consistently with the testimony of Ms. Wu, Xue Dexing, Qiu Xin Qin, except that Yong's testimony would have included the name of the stabber of [Zheng and Zhong]." (Id. at 14-15)

The People urged the court to deny Jiang's ineffective assistance of counsel claim on procedural grounds, because both the trial court and the First Department had already denied the claim on the merits. (Steward Decl. (Dkt. No. 9), Ex. R (Response to CPL § 440.10 motion) ¶¶ 8-9)  Jiang argued, however, that the evidentiary record for his CPL § 330.30 motion and direct appeal had been limited to "only counsel's affidavit, defendant's affidavit, and trial counsel's affidavit. . . ." (Steward Decl. (Dkt. No. 9), Ex. S (Petitioner's Reply Affidavit) ¶ 4; see also id. ¶ 8)  Because his CPL § 440.10 motion included several additional affidavits and other evidence, including Powell's notes, Jiang asserted that the motion was "for all intents and purposes, a new claim and not the same claim made on appeal." (Id. ¶ 5)

On June 30, 2011, Justice Marcy L. Kahn of the New York County Supreme Court denied Jiang's CPL § 440.10 motion. (Steward Decl. (Dkt. No. 9), Ex. T (Order denying CPL §§ 440.10 and 440.20 motions))  Justice Kahn found that Jiang's argument that counsel was ineffective for failing to locate and interview witnesses "merely reiterate[d] the arguments and affidavits he previously advanced on his CPL § 330.30 motion in 2006, which were considered by the First Department on his direct appeal and were rejected by that court on their merits." (Id. at 13-14 (citing People v. Ai Jiang, 62 A.D.3d 515, 516 (1st Dept. 2009)))  Accordingly, those

14

claims were "mandatorily procedurally barred." (Id. at 14-15 (citing CPL § 440.10(2)(a)))[3] The

court explained:

> Defendant asserts that his trial counsel, in her affirmation, misrepresented to the
> court that a potentially exculpatory witness had been deported in June 2005 when
> he had, in fact, not been deported until December 2005. He proffers evidence in
> the form of a facsimile document from the counsel of the potentially exculpatory
> witness and notes purportedly handwritten by his own trial counsel in support of
> this contention. As this same argument was considered and rejected on the merits
> by the First Department upon review of the same evidence defendant presents
> here, his claim is mandatorily procedurally barred on this motion.

(Id. at 14-15 (emphasis added) (citing CPL § 440.10(2)(a)))  Alternatively, Justice Kahn held

that because "these claims were raised in [Jiang's] CPL § 330.30 motion and rejected as without

merit, they are denied for that reason, as well." (Id. at 14 (citing CPL § 440.10(3)(b)))[4]

As for Jiang's contention that trial counsel was ineffective in not seeking an

intoxication charge, Justice Kahn rejected this claim on the merits, noting that such a charge was

"unsupported by any proof of 'the absence of strategic or other legitimate explanations' for

counsel's conduct." (Id. at 15-16 (quoting People v. Rivera, 71 N.Y.2d 705, 709 (1988)))

Justice Kahn likewise rejected Jiang's equal protection claim on the merits, noting that "in this

instance, where defendant received a plea offer of seven years' imprisonment covering three

---

[3] CPL § 440.10(2)(a) states that "the court must deny a motion to vacate a judgment when"

> [t]he ground or issue raised upon the motion was previously determined on the merits upon
> an appeal from the judgment, unless since the time of such appellate determination there has
> been a retroactively effective change in the law controlling such issue. . . .

CPL § 440.10(2)(a).

[4] CPL § 440.10(3)(b) provides that a "court may deny a motion to vacate a judgment when"

> [t]he ground or issue raised upon the motion was previously determined on the merits upon a
> prior motion or proceeding in a court of this state, other than an appeal from the judgment, or
> upon a motion or proceeding in a federal court; unless since the time of such determination
> there has been a retroactively effective change in the law controlling such issue. . . .

CPL § 440.10(3)(b).

violent felony indictments, in contrast to his accomplice, who was offered nine months'
imprisonment for one offense, the prosecution's divergent treatment of the two men was a
rational exercise of its discretion in seeking penalties suitable to the number and nature of the
respective offenses with which the two men were charged." (Id. at 18-19) Finally, the court
rejected Jiang's motion to set aside his sentence pursuant to § 440.20 as Jiang had presented "no
legal or factual basis for his motion." (Id. at 19) On January 27, 2012, the First Department
denied Jiang leave to appeal. (Steward Decl. (Dkt. No. 9), Ex. W (Certificate denying leave to
appeal))

### E.     Habeas Corpus Petition

        In the instant habeas corpus petition, Jiang argues that he is being held unlawfully
because (1) his trial counsel provided ineffective assistance of counsel by failing to locate and
interview exculpatory witnesses, request an intoxication charge, and object to certain aspects of
the trial court's charge and the prosecutor's arguments to the jury; (2) his appellate counsel
provided ineffective assistance of counsel by not arguing that trial counsel was ineffective in
failing to request an intoxication charge and in not challenging the trial court's refusal to give the
jury an alibi instruction; and (3) the indictments against Jiang were improperly joined and the
trial court erred in not instructing the jury to consider the February Incident and the November
Incident separately. (See Pet. (Dkt. No. 1) at 4-6)

### F.     Judge Netburn's Report and Recommendation

        On November 21, 2012 this Court referred Jiang's petition to Judge Pitman for a
report and recommendation. (Dkt. No. 12) On November 27, 2012, the referral was reassigned
to Judge Netburn. (Dkt. No. 14) In a May 21, 2013 R & R, Judge Netburn recommends that the
Petition be denied in its entirety. (R & R (Dkt. No. 22) at 45) With respect to Jiang's claims of

16

ineffective trial and appellate counsel, Judge Netburn – without deciding whether either lawyer's performance fell below an objectively reasonable standard – determined that Jiang could not establish prejudice as required by Strickland v. Washington, 466 U.S. 668 (1984). (Id. at 22-45) As to Jiang's failure to investigate claim, Judge Netburn concluded that "it was reasonable for the Appellate Division to align itself with the principle that trial counsel's decision of which witnesses to pursue was a strategic one and entitled to deference." (Id. at 31) Judge Netburn noted that trial counsel had submitted an affirmation stating that she was informed by Yong's wife that Yong had been deported and that an eye witness, Dong Wen Jing ("Mr. Dong"), had told counsel that he had no way of contacting other witnesses who could have testified. (Id.) Moreover, trial counsel elicited testimony from other witnesses – including Ms. Wu – to the effect that Jiang was not present at the February Incident. (Id. at 32) Judge Netburn also noted that – even if Yong were available – counsel could reasonably have concluded that having an admitted participant in the crime testify might "not be especially beneficial." (Id.) Trial counsel had been informed that Yong had pleaded guilty to the February attack because "'Ms. Wu's version of events did not survive investigation.'" (Id. (quoting Steward Decl. (Dkt. No. 9), Ex. B (Powell Aff.) ¶ 10)) Wu testified at trial that Jiang was not present for the February attack, and calling Yong presented a risk that he might undermine Wu's credibility. (Id.) Judge Netburn concluded that "because the desired evidence was introduced by other witness testimony – that Jiang was not present at the February incident and that Mr. Yong pled guilty to the attack – there is little basis to believe that the outcome of the trial would have been different had these witnesses been called." (Id.)

As to counsel's failure to request an intoxication charge in connection with the November incident, Judge Netburn noted that the decision to request such a charge "is a strategic

17

one entitled to deference." (Id. at 35)  That was particularly true here, because Jiang's defense –
as to the November Incident – was that "Weng attacked him and that he fought back in order to
fend off the attack." (Id. at 36 (citing Tr. 376-77) "[T]rial counsel may have determined, as a
matter of strategy, that an intoxication charge was inconsistent with the claimed [justification]
defense and 'could . . . undermine[] the reliability of petitioner's testimony.'" (Id. (quoting
Marchese v. Senkowski, No. 97-CV-2055 (JG), 1999 WL 731011, at *14 (E.D.N.Y. Sept. 15,
1999)))

           As to trial counsel's failure to seek a jury instruction that each charge should be
considered separately, Judge Netburn concluded that Jiang "has not established that he was
prejudiced." (Id. at 22)  Judge Netburn noted that the trial judge presented a "separate analysis
of each element of each charge," and that the jury's decision to "acquit[] Jiang on some charges
[but] convict[] him on others supports the presumption that the instructions were adequate." (Id.
(citing Page v. Greene, No. 05-CV-3985 (KMK)(LMS), 2012 WL 4477548, at *2 (S.D.N.Y.
Sept. 28, 2012)))

           Finally, as to trial counsel's failure to object to the People's statements and
alleged improper bolstering testimony, Judge Netburn concluded that the Appellate Division's
handling of these issues "was a reasonable application of Strickland." (Id. at 23)
As to the bolstering issue, Judge Netburn noted that it presented a state law evidentiary question
not cognizable on federal habeas review. (Id. at 24 (citing Diaz v. Greiner, 110 F. Supp. 2d 225,
234 (S.D.N.Y. 2000)))  Moreover, "the challenged evidence did not suggest that an out-of-court
identification implicating petitioner was made by anyone [who] did not testify at trial." (Id. at
25)

18

As to the alleged propensity arguments that the prosecutor made to the jury, Judge Netburn found no evidence "that the offending comments permeated the trial as a whole." (Id. at 27) Moreover, "the judge's charge emphasized that the jury should evaluate each charge separately and not allow evidence to bleed into separate charges." (Id. (citing Rolling v. Fischer, 433 F. Supp. 2d 336, 344 (S.D.N.Y. 2006))) Under these circumstances, Judge Netburn concluded that Jiang had not established that the prosecutor's statements had worked to "Jiang's 'actual and substantial disadvantage.'" (Id. (quoting Speringo v. McLaughlin, 202 F. Supp. 2d 178, 189 (S.D.N.Y. 2002)))

### G.    Jiang's Objections to the R & R

Jiang timely filed objections to Judge Netburn's R & R. (Petitioner's Objections (Dkt. No. 24)) Jiang objects only to Judge Netburn's recommendation concerning his ineffective assistance of trial counsel claim. With respect to that claim, Jiang argues that he has "demonstrated that (1) the cumulative errors of counsel require[] a finding that he was denied the effective assistance of counsel, and (2) that Magistrate Judge Netburn misperceived the crucial facts that led to unfounded legal conclusions." (Id. at 6) Jiang does not object to Judge Netburn's analysis of his claims concerning improper joinder or ineffective assistance of appellate counsel.

## DISCUSSION

## I.    STANDARDS OF REVIEW

### A.    Review of a Magistrate Judge's Report and Recommendation

In evaluating a magistrate judge's R & R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit

19

objections to the magistrate judge's R & R. Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).[5]

Where, as here, a party submits timely objections to an R & R, "[the district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3). "Objections to a [R & R] 'are to be specific and are to address only those portions of the proposed findings to which the party objects.'" Martinez v. Senkowski, No. 02 Civ. 0009(LTS)(KNF), 2008 WL 4501842, at *2 (S.D.N.Y. Sept. 29, 2008) (quoting Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992)). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see also United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). "However, when a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Renelique v. Doe, No. 99 Civ. 10425 (LTS) (HBP), 2003 WL 23023771, at *1 (S.D.N.Y. Dec. 29, 2003).

While pro se submissions "are generally accorded leniency and should be construed to raise the strongest arguments that they suggest, . . . even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply

---

[5] Judge Netburn issued her R & R on May 21, 2013. (Dkt. No. 22) However, the R & R was not mailed to Jiang at that time due to a clerical error. In an August 29, 2013 order, Judge Netburn acknowledged the error, confirmed that a copy of the R & R was being mailed to Jiang that day, and notified Jiang that he had fourteen days from the service of the R & R to file written objections with this Court. (Dkt. No. 23) Jiang's objections were mailed on September 9, 2013 – within the fourteen-day window. (Dkt. No. 24) His objections are therefore timely.

relitigating a prior argument." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 340 (S.D.N.Y.

2009) (internal citations and quotation marks omitted).

Here, Jiang has made specific objections to Judge Netburn's findings concerning

his ineffective assistance of trial counsel claim. Accordingly, the portion of the R & R

addressing this claim will be reviewed de novo. The remainder of the R & R will be reviewed

for clear error.

## B.    Standards for Habeas Review of State Court Decisions

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28

U.S.C. § 2254(d), requires that this Court give deference to state court decisions that are

rendered on the merits. Harrington v. Richter, 562 U.S. 86, 101 (2011) (noting that "[a] state

court must be granted a deference and latitude that are not in operation when the case involves

[direct] review [of a criminal conviction]").

Section 2254(d) provides that

[a]n application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has held that "it is the habeas applicant's burden to show that

the state court applied [federal law] to the facts of his case in an objectively unreasonable

manner." Woodford v. Visciotti, 537 U.S. 19, 25 (2002). "[A]n unreasonable application of

federal law is different from an incorrect application of federal law," Williams v. Taylor, 529

21

U.S. 362, 410 (2000) (emphases in original). "A state court's determination that a claim lacks

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v.

Alvarado, 541 U.S. 652, 664 (2004)); see also id. at 103 ("As a condition for obtaining habeas

corpus from a federal court, a state prisoner must show that the state court's ruling on the claim

being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement."). Consequently, a federal court must sometimes deny a habeas petition where it

would have reached a different conclusion than a state court, because "even a strong case for

relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing

Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).

> As to a state court's factual findings,

> [t]he Supreme Court has made clear that a "state-court factual determination is not
> unreasonable merely because the federal habeas court would have reached a
> different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301
> (2010). Where "[r]easonable minds reviewing the record might disagree" as to
> the relevant finding, that is not sufficient to supplant the state court's factual
> determination. Rice v. Collins, 546 U.S. 333, 341-42 (2006). Nevertheless, the
> state court's finding might represent an "unreasonable determination of the facts"
> where, for example, reasonable minds could not disagree that the trial court
> misapprehended or misstated material aspects of the record in making its finding,
> see Wiggins v. Smith, 539 U.S. 510, 528 (2003), or where the court ignored
> highly probative and material evidence, see Miller–El v. Cockrell, 537 U.S. 322,
> 346 (2003).

Cardoza v. Rock, 731 F.3d 169, 177-78 (2d Cir. 2013).

> The deferential standard of review under the AEDPA applies even where a state

court decision does not explicitly reference a defendant's federal claim or federal case law:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state
> prisoner's federal claim on the merits when it (1) disposes of the claim "on the
> merits," and (2) reduces its disposition to judgment. When a state court does so, a
> federal habeas court must defer in the manner prescribed by 28 U.S.C.

§ 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001); accord Bell v. Cone, 543 U.S. 447, 455 (2005) ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (First Department held that petitioner's claim was "'without merit'"; "[s]uch a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254"); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir. 2004) (AEDPA deference applied where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims'"). Moreover, "[i]f any reasonable ground was available [for the state court's decision], [a reviewing court] must assume the [state] court relied on it." Wade, 391 F.3d at 142.

"Under the independent and adequate state ground doctrine, a federal court sitting in habeas 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (emphases in original) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); see also Downs v. Lape, 657 F.3d 97, 101 (2d Cir. 2011) ("We therefore will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." (internal quotation marks omitted)).

23

"Independent and adequate state law grounds preventing federal review include violations of state procedural rules – for example, the failure to comply with a state's filing deadline." Richardson, 497 F.3d at 217 (citation omitted). However, "[a]n independent and adequate state ground for rejecting a federal claim does not bar federal court review of the claim if the petitioner demonstrates 'cause and actual prejudice' for failing to comply with the state rule." Downs, 657 F.3d at 101 n.1. The "fundamental miscarriage of justice" exception, which is "explicitly tied . . . to the petitioner's innocence," permits a court faced with an "extraordinary case" to review a procedurally defaulted claim. Schlup v. Delo, 513 U.S. 298, 321 (1995); see also Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (noting that actual innocence may excuse procedural default in "extremely rare" cases).

## II. ANALYSIS

### A. Ineffective Assistance of Trial Counsel Claim

Jiang argues that his trial counsel was constitutionally ineffective because she did not: (1) request an intoxication charge concerning the November Incident; (2) object to the prosecutor's alleged propensity argument and improper elicitation of bolstering testimony; (3) ask the trial judge to instruct the jury that each charge against Jiang must be considered separately; and (4) locate and interview potential exculpatory witnesses and inform the trial judge of the availability of a co-defendant who was prepared to testify in Jiang's defense. (Pet. (Dkt. No. 1) at 13-21) Jiang argues that he "suffered acute prejudice because of these individual and cumulative errors." (Id. at 20)

24

## 1.    **Legal Standards**

### a.    *Strickland v. Washington*

Ineffective assistance of counsel claims "are squarely governed by [the Supreme

Court's] holding in Strickland v. Washington, 466 U.S. 668 (1984)." Williams, 529 U.S. at 390.

In order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy

a two-part test. See Strickland, 466 U.S. at 687; LanFranco v. Murray, 313 F.3d 112, 118 (2d

Cir. 2002).  First, the petitioner must establish that his attorney's performance was so deficient

that it "fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  "This

requires showing that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  "[T]he purpose of the

effective assistance guarantee of the Sixth Amendment is . . . simply to ensure that criminal

defendants receive a fair trial."  Id. at 689.  "Thus, '[t]he benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result.'"  Cullen v.

Pinholster, 563 U.S. 170, 189 (2011) (quoting Strickland, 466 U.S. at 686 (emphasis in Cullen)).

Second, a petitioner must demonstrate that he was prejudiced by counsel's

deficient performance.  "[T]he question is whether there is a reasonable probability that, absent

the errors, the factfinder would have had a reasonable doubt respecting guilt."  Strickland, 466

U.S. at 695.  Stated differently, "[t]he defendant must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different."  Id. at 694.

While the defendant must prove both deficient performance and prejudice, the

Supreme Court has made clear that "there is no reason for a court deciding an ineffective

assistance claim to approach the inquiry in the same order or even to address both components of
the inquiry if the defendant makes an insufficient showing on one." Id. at 697.  The Supreme
Court has also cautioned that

> strategic choices made after thorough investigation of law and facts relevant to
> plausible options are virtually unchallengeable; and strategic choices made after
> less than complete investigation are reasonable precisely to the extent that
> reasonable professional judgments support the limitations on investigation. . . . In
> any ineffectiveness case, a particular decision not to investigate must be directly
> assessed for reasonableness in all the circumstances, applying a heavy measure of
> deference to counsel's judgments.

Id. at 690-91.

The Second Circuit has instructed that alleged errors by counsel must be
considered "in the aggregate," because "Strickland directs [courts] to look at the 'totality of the
evidence before the judge or jury,' keeping in mind that '[s]ome errors [ ] have . . . a pervasive
effect on the inferences to be drawn from the evidence, altering the entire evidentiary
picture . . . .'" Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland, 466
U.S. at 695-96 (alteration in Lindstadt)); see also Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir.
1991) (noting that because a "claim of ineffective assistance of counsel can turn on the
cumulative effect of all of counsel's actions, all [of a petitioner's] allegations of ineffective
assistance should be reviewed together"). Accordingly, "[i]n evaluating the prejudice suffered
by a petitioner as a result of counsel's deficient performance, the court looks to the 'cumulative
weight of error' in order to determine whether the prejudice 'reache[s] the constitutional
threshold.'" Bligen v. Burge, No. 06 Civ. 1375(CM)(HBP), 2008 WL 5336693, at *6 (S.D.N.Y.
Oct. 20, 2008) (quoting Lindstadt, 239 F.3d at 202 (alteration in Bligen)), report and
recommendation adopted in part, 2008 WL 5351995 (S.D.N.Y. Dec. 22, 2008).

### b.     Ineffective Assistance of Counsel Claims and the AEDPA

For purposes of habeas review, "[t]he Strickland standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Aparicio v. Artuz, 269 F.3d 78, 95 & n.8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)). Under the AEDPA, "a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'" Id. at 95 n.8 (citing Williams, 529 U.S. at 391; Sellan, 261 F.3d at 309).

The degree of deference owed to a state court's determination under the AEDPA "turns on whether the state courts have passed on the merits of the petitioner's claim, that is, whether the decision of the highest state court to consider the claim is 'based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" McDowell v. Heath, No. 09 Civ. 7887(RO)(MHD), 2013 WL 2896992, at *18 (S.D.N.Y. June 13, 2013) (quoting Sellan, 261 F.3d at 311). Where a state court has addressed the merits of a claim, the petitioner is entitled to habeas relief only where the state court's decision "(1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[I]f the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009) (quoting Spears v. Greiner, 459 F.3d 200, 203 (2d Cir. 2006)).

While "'[s]urmounting Strickland's high bar is never . . . easy,'" Harrington, 562 U.S. at 88 (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)), a habeas petition premised

27

on an adjudicated claim of ineffective assistance of counsel faces an even greater burden. That is

because

> [t]he standards created by Strickland and § 2254(d) are both "highly deferential,"
> Strickland, 466 U.S. at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and
> when the two apply in tandem, review is "doubly" so, Knowles v. Mirzayance,
> 556 U.S. 111, 112 (2009). The Strickland standard is a general one, so the range
> of reasonable applications is substantial. Knowles, 556 U.S. at 123. Federal
> habeas courts must guard against the danger of equating unreasonableness under
> Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable. The question is
> whether there is any reasonable argument that counsel satisfied Strickland's
> deferential standard.

Harrington, 562 U.S. at 105.

Although "'a district court facing the question of constitutional ineffectiveness of

counsel should . . . offer the assertedly ineffective attorney an opportunity to be heard and

present evidence,'" Jackson v. Conway, 763 F.3d 115, 131 (quoting Sparman v. Edwards, 154

F.3d 51, 52 (2d Cir. 1998) (per curiam) (alteration in Jackson)), where a state court has issued a

decision on the merits, "the federal court is generally confined to the record before the state court

that adjudicated the claim." Id. at 132 (citing Cullen, 563 U.S. at 181-82); see also Melendez v.

Lempke, No. 09-cv-4373 (DLI), 2012 WL 3887093 (E.D.N.Y. Sept. 7, 2012) ("[The Cullen rule]

applies in ineffective assistance of counsel claims where the claim has been decided on the

merits by the state court, and it sets limits as to when federal courts can develop an evidentiary

record.").

## 2.    Jiang's Objection to the R & R

In her R & R, Judge Netburn found that it was unnecessary to determine whether

Jiang's trial counsel's performance fell below an objectively reasonable standard, because none

of counsel's alleged errors satisfy Strickland's prejudice prong. Accordingly, Judge Netburn

concluded that Jiang had not shown that the state courts' denial of his various ineffective

28

assistance of trial counsel claims was "an unreasonable application of the Strickland standard."
(R & R (Dkt. No. 22) at 34)

While Jiang recognizes in his objections that both "the state court[s] and
Magistrate Judge Netburn found that the individual errors did not prejudice [him]," he argues
that "cumulatively . . . he has demonstrated that he was prejudiced." (Petitioner's Objections
(Dkt. No. 24) ¶ 5) Jiang further asserts that Judge Netburn erred in finding "that the issues raised
and proof presented on [his failure to investigate claim] were the same in the C.P.L. § 330.30
motion, direct appeal, and on the C.P.L. § 440.10 motion." (Id. ¶ 6) Jiang contends that the
"proof submitted on the C.P.L. § 440.10 [motion] varied significantly from the C.P.L. § 330.30
motion and the direct appeal," and that "[n]o court . . . has viewed and considered [] new
affirmations submitted by both appellate counsel and all the witnesses that Jiang's attorney . . .
failed to interview, in addition to affidavits that controverted [trial counsel's] false assertions that
Jiang's chief witness had been deported." (Id. ¶ 7)

Jiang also challenges Judge Netburn's legal conclusions concerning his trial
counsel's purported failure to investigate witnesses or request an intoxication charge. With
respect to the former, Jiang asserts that Judge Netburn erred in concluding that his trial counsel's
failure to investigate witnesses was a strategic decision entitled to deference. (Id. ¶¶ 10-13)
Jiang argues that since his trial counsel never interviewed Yong, she could not have made "the
reasoned decision required under Strickland." (Id. ¶ 13) As to counsel's failure to request an
intoxication charge, Jiang contends that Judge Netburn erred in finding that this failure "did not
prejudice Jiang[,] because an Intoxication Defense would be inconsistent with [Jiang's]
Justification defense." (Id. ¶ 14) Jiang argues that, to the contrary, "[j]ustification and

29

[i]ntoxication are quite compatible" because "[t]he one defense obviates culpability and the other can lessen culpability." (Id. ¶ 15)

### 3.   Analysis

This Court considers below each alleged instance of trial counsel's ineffectiveness, and then addresses Jiang's claim that he was prejudiced by the cumulative effect of these alleged errors.

#### a.   Failure to Seek an Intoxication Charge

Jiang argues that Powell was constitutionally ineffective because she did not request an intoxication charge.

The state court rejected this precise argument, however, concluding, inter alia, that Jiang had not cited evidence demonstrating that an intoxication charge would have been appropriate. (See Steward Decl. (Dkt. No. 9), Ex. T (Order denying CPL §§ 440.10 and 440.20 motions) at 16) Because the New York Supreme Court rejected this claim on the merits, that decision is entitled to deference under both Strickland and the AEDPA. See Sellan, 261 F.3d at 312.

In rejecting Jiang's argument that trial counsel was ineffective in failing to seek an intoxication charge, the state court correctly identified Strickland as the relevant constitutional standard. (Steward Decl. (Dkt. No. 9), Ex. T (Order denying CPL §§ 440.10 and 440.20 motions) at 11-12) The court noted that Jiang had not demonstrated that there were no "'strategic or other legitimate explanations' for counsel's conduct":

> Here, defendant does nothing more than second guess counsel's strategy. He proffers no evidence of the absence of a strategic reason for the failure to request an intoxication charge, and indeed, points to nothing in the trial record which would have supported the giving of the charge, nor does he demonstrate any prejudice from counsel's failure to request one.

(Id. at 16)

In recommending that this claim be rejected, Judge Netburn noted that "[Jiang's] trial counsel may have determined, as a matter of strategy, that an intoxication charge was inconsistent with [Jiang's self-defense claim] and 'could . . . undermine[] the reliability of petitioner's testimony [that he acted in self-defense].'" (See R & R (Dkt. No. 22) at 36 (quoting Marchese v. Senkowski, No. 97-CV-2055 (JG), 1999 WL 731011, at *14 (E.D.N.Y. Sept. 15, 1999))) Jiang's objection to this finding – that "[o]ne can be intoxicated and still perceive the need to protect one's self or misperceive the need to protect one's self" (Petitioner's Objections (Dkt. No. 24) ¶ 15) – misses the point. The question is not whether counsel could have argued both theories, but whether it was reasonable for counsel to focus her efforts on attempting to persuade the jury that Jiang acted in self-defense. Such a strategy was reasonable here, given the evidence and the fact that a determination that Jiang had acted in self-defense would result in an acquittal, whereas a conclusion that Jiang had been intoxicated would merely limit his criminal exposure. See McKinley v. McDonald, No. CV 11-9047 JVS (JCG), 2014 WL 2557573, at *3 (C.D. Cal. Mar. 10, 2014), report and recommendation adopted, 2014 WL 2566929 (C.D. Cal. June 5, 2014) ("Counsel's decision was reasonable in light of the fact that his defense theory offered the opportunity of acquittal, while a voluntary intoxication defense would have merely limited Petitioner's criminal liability.").

In sum, trial counsel's failure to seek an intoxication charge does not constitute ineffective assistance of counsel.

### b.  **Failure to Object**

Jiang also claims that his trial counsel was ineffective in not objecting to (1) the prosecutor's alleged propensity argument during openings and his alleged elicitation of bolstering testimony during direct examination of NYPD Detectives Chan and Oliver; and (2) to

31

the trial court's decision not to instruct the jury to consider the February and November incidents separately. (Pet. (Dkt. No. 1) at 20-21, 25) The First Department rejected these claims on the merits, and Jiang has not shown how that decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In considering these claims, the First Department correctly identified Strickland as the relevant constitutional standard, see People v. Ai Jiang, 62 A.D.3d 515, 515-16 (1st Dept. 2009), and concluded that Jiang had not satisfied Strickland's prejudice prong,

> [D]efendant argues that his counsel was ineffective for failing to make objections
> . . . . However, counsel's failure to do so did not deprive defendant of a fair trial
> or cause him any prejudice. None of these arguments, even if successfully made
> to the trial court, would have affected the outcome of the case.

Id. (internal citations omitted). Having reviewed the record, this Court cannot find that the First Department's determination on these points lacks a reasonable basis. Cf. Harrington, 562 U.S. at 105 ("The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.").

As to the alleged failure to instruct the jury that the February and November Incidents should be considered separately, Judge Wetzel instructed the jury in detail regarding each element of each charge (Tr. 470-478), and emphasized that "[the People] must prove each and every element beyond a reasonable doubt." (Tr. 489) The jury acquitted Jiang of first-degree gang assault and attempted second-degree murder for the February attack on Zhong, and also acquitted him of attempted second-degree murder for the November attack on Weng. (See Tr. 495-96) The fact "[t]hat the jury acquitted Jiang on some charges and convicted him on others supports the presumption that the instructions were adequate." (R & R (Dkt. No. 22) at 22 (citing Page v. Greene, No. 05-CV-3985 (KMK)(LMS), 2012 WL 4477548, at *2 (S.D.N.Y.

32

Sept. 28, 2012) ("The Court agrees with Magistrate Judge Smith that Petitioner has failed to show actual prejudice regarding the jury's ability to separate the proof of the counts at trial, as, in fact, the jury acquitted Petitioner on at least one charge." (citation omitted))).

As to Jiang's arguments concerning purported prosecutorial misconduct, Judge Netburn correctly notes that (1) alleged violations of People v. Trowbridge, 305 N.Y. 471 (1953) – which sets forth a state law rule "that it is generally impermissible for one witness to corroborate an identification previously made by another witness" (R & R (Dkt. No. 22) at 23) – "are not independently cognizable on habeas review because they are brought under state law and therefore do not raise a federal question" (Id. at 24 (citing Diaz v. Greiner, 110 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) (denying habeas petition seeking relief for, inter alia, alleged Trowbridge violation))); and (2) "there is no evidence" that the prosecutor's purported propensity argument "permeated the trial as a whole," or was otherwise outcome determinative. (Id. at 27)

Jiang has not demonstrated that his trial counsel's failure to object constitutes ineffective assistance of counsel, much less that the First Department violated clearly established Federal law in rejecting his arguments on these points.

### c. Failure to Investigate

Jiang also argues that Powell was constitutionally ineffective in "fail[ing] to conduct any type of investigation into the availability of [Yong] to testify on Jiang's behalf," and that she lied to the trial judge when she stated in her affidavit that "Yong had been deported on or before June 6, 2005." (Pet. (Dkt. No. 1) at 14) According to Jiang, "no valid tactical reason can support [Powell's] decision not to investigate or call [Yong], [or] interview other witnesses who were readily available." (Id. at 17) Jiang further contends that his failure to investigate

33

claim was never decided on the merits, because Justice Kahn – in denying Jiang's CPL § 440.10 motion – "mistakenly thought the issue had been decided on appeal, when, in fact, the appellate court found that it could not reach the merits of the claim because it was based on facts [outside] the record." (Id. at 16) Jiang asserts that he is entitled to an evidentiary hearing pursuant to Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998), "because (1) the issue has never been resolved on the merits, and (2) if the decision on the C.P.L. § 330.30 motion can be deemed to be 'on the merits', then, under 28 U.S.C.A. § 2254(e)(1), Petitioner has established by clear and convincing evidence that those findings were incorrect." (Pet. (Dkt. No. 1) at 16)

Judge Netburn recommends that this Court deny both Jiang's request for a Sparman hearing and his claim that trial counsel was constitutionally ineffective in failing to investigate Yong and other witnesses who allegedly possessed exculpatory information. (R & R (Dkt. No. 22) at 34)

As an initial matter, Judge Netburn concludes that Justice Wetzel's denial of Jiang's CPL § 330.30 motion is the last "reasoned state opinion" concerning this issue for purposes of federal habeas review:

Despite the procedural errors cited by the Appellate Division and [Justice Kahn's] statement that the claim was "procedurally barred" by [the New York Supreme Court's] earlier ruling [denying Jiang's CPL § 330.0 motion], this Court can review the merits [of Jiang's failure to investigate claim] under § 2254(d). Jiang did not default on this claim in state court. Rather, his counsel committed the procedural error of bringing this claim in a CPL § 330.30 motion rather than a CPL § 440.10 motion. The Supreme Court overlooked the error and reviewed the claim on the merits, presumably because it is the same court that would ultimately decide a CPL § 440.10 motion. The "procedural bar" to which [Justice Kahn] referred is therefore its own inability to revisit an issue it previously decided, see CPL § 440.10(3)(b), not the failure of an appellant to preserve a claim on appeal.

(R & R (Dkt. No. 22) at 30)

In concluding that Justice Wetzel rejected Jiang's failure to investigate claim on the merits, Judge Netburn points out that Justice Wetzel's order denying Jiang's CPL § 330.30

34

motion states that Powell "'provided a detailed report of her investigation efforts and meetings with witnesses which completely refutes the defendant's assertions to the contrary.'" (Id. at 29 (quoting Steward Decl. (Dkt. No. 9), Ex. D (Order denying CPL § 330.30 motion) at 3))

Noting that "[i]t is not within the scope of this Court's authority on habeas review to say whether more diligence on the part of the trial counsel would have yielded the telephone numbers of the witnesses or revealed that Mr. Yong had not yet been deported at the time of trial preparation," Judge Netburn concludes that "it was reasonable for the Appellate Division to align itself with the principle that trial counsel's decision of which witnesses to pursue was a strategic one and entitled to deference." (Id. at 31) In reaching this conclusion, Judge Netburn points out that Powell submitted an affidavit stating that Ms. Wu had informed Powell that Yong had been deported, and that another defense witness, Mr. Dong, informed Powell that he had no way of contacting other witnesses who might possess exculpatory information. (Id. at 31) Accordingly, "[i]t was reasonable for the Appellate Division to find that these logistical hurdles prevented counsel from contacting these witnesses," and that counsel's actions did not reflect "merely time and cost-saving measures." (Id. at 31-32)

Judge Netburn also cites factors that could have "inform[ed] [Powell's] decision not to call these witnesses." (Id. at 32) For example, "[Powell's] affidavit reveals that the ADA suggested that Mr. Yong had pled guilty to the attack because 'Ms. Wu's version of events did not survive investigation.'" (Id. (quoting Steward Decl. (Dkt. No. 9), Ex. B (Powell Aff.) ¶ 10)) Yong's guilty plea to second degree assault was, of course, entirely inconsistent with Wu's account that Yong was a victim and not the initial aggressor. (See Steward Decl. (Dkt. No. 9) Ex. B (Powell Aff.) at ¶ 16) Given these circumstances, Judge Netburn found that it was "conceivable that [Powell] would not have wanted to risk undermining the credibility of Ms. Wu

35

. . . with Mr. Yong's testimony." (R & R (Dkt. No. 22) at 32) Judge Netburn further concluded that, "because the desired evidence was introduced by other witness testimony – that Jiang was not present at the February incident and that Mr. Yong pled guilty to the attack – there is little basis to believe that the outcome of the trial would have been different had these witnesses been called." (Id. at 32) Finally, Judge Netburn recommended that this Court deny Jiang's request for a Sparman hearing because "Jiang's ineffective assistance of counsel claims were reviewed on the merits for the purposes of 28 U.S.C. § 2254(d)," and Jiang "has not shown by clear and convincing evidence that, but for his counsel's failure to investigate Yong, no reasonable fact finder could have found him guilty." (Id. at 33-34)

In objecting to Judge Netburn's recommendation that his claim concerning Powell's purported failure to investigate exculpatory witnesses be denied, Jiang makes the following arguments:

6. Factually, the Magistrate erred when [she] found that the issues raised and proof presented on the claim of failure to investigate and interview the witnesses were the same in the C.P.L. § 330.30 motion, direct appeal, and on the C.P.L. § 440.10 motion, and controlled by the last reasoned decision on the C.P.L. § 330.30 motion and the gratuitous alternative appellate court decision in People v. Ai Jiang, 62 A.D.3d 515, 880 N.Y.S.2d 12 (2009).

7. The proof submitted on the C.P.L. § 440.10 [motion] varied significantly from the C.P.L. § 330.30 motion and the direct appeal . . . . No court, including Magistrate Netburn, has viewed and considered the new affirmations submitted by both appellate counsel and all the witnesses that [Powell] failed to interview, in addition to affidavits that controverted Powell's false assertions that Jiang's chief witness had been deported.

8. . . . [M]ixed claims of ineffective assistance of counsel [i.e., those based on both record and non-record evidence] . . . can only be raised in a C.P.L. § 440.10 motion. Regrettably, the C.P.L. § 440.10 court also refused to address these claims[,] claiming that the appellate court had addressed them. The factual basis of the claims, affidavits of witnesses and counsel, have not been considered by any court and thus the Magistrate Judge's findings are factually erroneous.

9. For instance, the fact witnesses who submitted affidavits completely controverted either what Powell asserted [was] said by them, or that they were ever interviewed

36

by Powell. Then, appellate counsel submitted his affirmation stating that Powell's records revealed that she was well aware that [Yong], the admitted perpetrator of the crimes, had not been deported; however, Powell had submitted an affirmation to the C.P.L. § 330.30 court stating that she did not interview Yong because he had been deported. Powell misrepresented the facts to the court. Upon this proof submitted by Jiang to the state court on collateral review, he should have been granted a hearing but for the errors by those state courts. As such, the state court decisions could not have reasonably applied Strickland v. Washington, 466 U.S. 668.

10.     Moreover, objections are required for [Judge Netburn's] unfounded legal conclusions. Judge Netburn found that Powell had satisfied Strickland's investigation/performance prong because "strategic choices made after a thorough investigation of the law and facts relevant to the plausible options are virtually unchallengeable."

. . . .

13.     . . . If Yong had been interviewed, then the parameters of the crime and its participants could have been ascertained, and then Powell could have made a "strategic" decision on what defense to present. It is for that reason that Judge Netburn's finding that Yong's testimony may have undermined or been inconsistent with Wu's testimony was not supported by any facts; upon what evidence is this supposition based? Powell never interviewed Yong to make the reasoned decision required under Strickland.

(Petitioner's Objections (Dkt. No. 24) ¶¶ 6-10, 13)

In considering Jiang's objections, this Court must first determine what effect, if any, the New York Supreme Court's denial of Jiang's CPL § 440.10 motion has on the ability of this Court to review the merits of Jiang's claim. As Judge Netburn notes, Jiang first raised his failure to investigate claim in his CPL § 330.30 motion. That motion includes the same witness affidavits referenced in Jiang's habeas petition. (R & R (Dkt. No. 22) at 28) However, the CPL § 330.30 motion does not include the faxed documents from Hugh Mo or Powell's handwritten notes. On direct appeal, Jiang repeated his failure to investigate claim and sought to enlarge the record to include Mo's faxed documents and Powell's notes. The First Department determined that Jiang's failure to investigate claim was procedurally barred for a number of reasons, including the fact that it was premised on matters outside the record. In the alternative, the court

37

ruled that the claim was meritless. Because the First Department denied Jiang's motion to

enlarge the record, however, its review was limited to the factual record before Justice Wetzel.

          In denying Jiang's CPL § 440.10 motion, Justice Kahn rendered the final state

court judgment on Jiang's failure to investigate claim. In her opinion denying Jiang's assertion

"that his trial counsel failed to investigate, interview and call potential exculpatory witnesses,"

Justice Kahn reasoned that it

> merely reiterate[s] the arguments and affidavits he previously advanced on his
> CPL § 330.30 motion in 2006, which were considered by the First Department on
> his direct appeal and were rejected by that court on their merits. . . . Therefore,
> th[is] claim[ is] denied as mandatorily procedurally barred.  (CPL § 440.10(2)(a)).
> Alternatively, as th[is] claim[ ] w[as] raised in defendant's CPL § 330.30 motion
> and rejected as without merit, [it is] denied for that reason, as well.  (CPL §
> 440.10(3)(b)). . . .

> Defendant asserts that his trial counsel, in her affirmation, misrepresented to the
> court that a potentially exculpatory witness had been deported in June 2005 when
> he had, in fact, not been deported until December 2005.  He proffers evidence in
> the form of a facsimile document from the counsel of the potentially exculpatory
> witness and notes purportedly handwritten by his own trial counsel in support of
> this contention.  As this same argument was considered and rejected on the merits
> by the First Department <u>upon review of the same evidence defendant presents
> here</u>, his claim is mandatorily procedurally barred on this motion.  (CPL §
> 440.10(2)(a)).

(Steward Decl. (Dkt. No. 9), Ex. T (Order denying CPL §§ 440.10 and 440.20 motions) at 13-15

(emphasis added))  Justice Kahn also ruled that Jiang was not entitled to a hearing under CPL §

440.30 because his motion was without legal basis.  (See id. at 15, 17 (citing CPL §

440.30(4)(a))

          CPL § 440.10(2)(a) is a mandatory state procedural bar that requires a court to

deny a motion to vacate a conviction where

38

[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue; . . .

CPL § 440.10(2)(a).

Federal courts disagree as to whether a New York state court's reliance on CPL § 440.10(2)(a) constitutes a procedural bar that precludes federal habeas review. See Soberanis v. Brown, No. 10-cv-2695-RA-RLE, 2014 WL 5038364, at *1 n.1 (S.D.N.Y. Sept. 30, 2014) (noting that "[j]udges in this district appear divided" as to whether CPL § 440.10(2)(a) acts as a procedural bar, and collecting cases); compare Zacher v. Graham, No. 6:14-CV-06027 (MAT), 2016 WL 368086, at *7 (W.D.N.Y. Feb. 1, 2016) (citing CPL § 440.10(2)(a) as a procedural bar to review), and Chrysler v. Guiney, 14 F. Supp. 3d 418, 453-54 (S.D.N.Y. 2014) (claim procedurally barred where state court denied claim based on CPL § 440.10(2)(a)), aff'd, 806 F.3d 104 (2d Cir. 2015), and Cruz v. Berbary, 456 F. Supp. 2d 410, 419 (W.D.N.Y. 2006) (denial based on CPL § 440.10(2)(a) constitutes adequate and independent state ground resulting in procedural default for purposes of federal habeas claim), and Hronopoulos v. Keane, No. 98-CV-3221(JG), 1999 WL 529559, at *4 (E.D.N.Y. July 21, 1999) (finding that petitioner's claim was procedurally barred under CPL § 440.10(2)(a)), with Bethea v. Walsh, No. 09-CV-5037 (NGG), 2016 WL 258639, at *12 (E.D.N.Y. Jan. 19, 2016) (rejecting argument that "[CPL] § 440.10(2)(a) constitutes an independent and adequate procedural bar to this court's review of those claims"), and Douglas v. Hollins, No. 00 Civ. 7928(MBM), 2004 WL 187130, at *6 n.5 (S.D.N.Y. Jan. 29, 2004) (state court decision pursuant to CPL § 440.10(2)(a) "does not constitute a finding of procedural default that precludes federal habeas review of the merits"), and Heron v. Coughlin, No. 94 Civ. 1860 GBD HBP, 2003 WL 21921267, at *1 (S.D.N.Y. Aug. 11, 2003) (because petitioner's "claims were raised on direct appeal to the highest court in New

York, there is no logical reason why their erroneous assertion in a state collateral proceeding should give rise to a procedural bar [for federal habeas purposes]"), and Guzman v. Couture, No. 99 CIV 11316 (RMB) (HBP), 2003 WL 165746, at *11 (S.D.N.Y. Jan. 22, 2003) ("[S]ince the trial court expressly relied on CPL § 440.10(2)(a) to deny petitioner's application, it cannot be said that the court relied on a procedural bar, and this court is not precluded from turning to the merits of these two claims.").[6]

CPL § 440.10(3)(b) is a permissive state procedural bar that allows a state court to deny a motion to vacate where

> [t]he ground or issue raised upon the motion was previously determined on the merits upon a prior motion or proceeding in a court of this state, other than an appeal from the judgment, or upon a motion or proceeding in a federal court; unless since the time of such determination there has been a retroactively effective change in the law controlling such issue. . . .

CPL § 440.10(3)(b).

"While the case law regarding section 440.10(3)(b) is less prolific, a state court's relianc[e] therein also may result in a procedural bar to habeas review." Garner v. Superintendent of Upstate Corr. Facility, No. 9:01-CV-0501 (LEK/DEP), 2007 WL 2846907, at *20 (N.D.N.Y. Sept. 26, 2007); see also Waters v. Martuscello, No. 10-CV-5700(DLI), 2014 WL 1276957, at *8 (E.D.N.Y. Mar. 27, 2014) (finding that claim was procedurally barred, and noting that "[c]ourts have routinely recognized that a petitioner's failure to comply with [CPL § 440.10(3)(b) & (c)] in litigating a claim operates as an independent and adequate state law ground barring subsequent federal habeas review of such a claim"); Warren v. Goord, No. 06-

---

[6] There is also conflicting Second Circuit authority on the issue of whether CPL § 440.10(2)(a) operates as a procedural bar for purposes of federal habeas review. Compare Fernandez v. Artuz, 402 F.3d 111, 115 n.4 (2d Cir. 2005) (describing CPL §§ 440.10(2)(a) and 440.10(2)(c) as procedural bars under New York law) (citing Artuz v. Bennett, 531 U.S. 4, 8 (2000)), with Silverstein v. Henderson, 706 F.2d 361, 368 (2d Cir. 1983) (state court ruling under CPL § 440.10(2)(a) "does not constitute a finding of procedural default that would bar federal consideration of [petitioner's] claims").

CV-1423 RRM, 2013 WL 1310465, at *16 (E.D.N.Y. Mar. 28, 2013) (denial of relief based on CPL § 440.10(3)(b) constitutes a "procedural denial . . . independent from federal law and adequate to support the state court's judgment and this claim is procedurally barred and unreviewable by the Court").

CPL § 440.30(4)(a) – also cited by Justice Kahn – provides that "[u]pon considering the merits of [a motion to vacate], the court may deny it without conducting a hearing if . . . [t]he moving papers do not allege any ground constituting legal basis for the motion . . . ." CPL § 440.30(4)(a) (emphasis added). "Habeas courts generally consider a state court's reliance on section 440.30(4)(a) to constitute an adjudication on the merits." Garner, 2007 WL 2846907, at *20 (citing Ortiz v. Keohane, No. CV-94-0124 (CPS), 1995 WL 669904, at *4 n.5 (E.D.N.Y. Nov. 5, 1995) (finding that CPL § 440.30(4)(a) does not provide an "independent and adequate state procedural ground[]" because it is on the merits); Muhammad v. Kirk, No. 90 CIV. 1667 (LMM), 1993 WL 37502, at *4 (S.D.N.Y. Feb. 8, 1993) (rejecting argument that CPL § 440.30(4)(a) determination qualified as "an adequate and independent state procedural bar")).

The circumstances here are unusual. In denying Jiang's CPL § 440.10 motion, Justice Kahn assumed that Jiang was relying on evidence that had been presented and considered in connection with Jiang's CPL § 330.30 motion and direct appeal. However, the faxed documents from Hugh Mo and Powell's handwritten notes were not submitted to the Supreme Court with Jiang's § 330.30 motion, and the First Department ruled that Jiang's failure to investigate claims were "unreviewable on direct appeal because they involve matters outside the record." People v. Ai Jiang, 62 A.D.3d 515, 516 (1st Dept. 2009). The First Department also denied Jiang's request that the record be enlarged to include the Mo documents and the Powell

41

notes. Id. Accordingly, the rationale for Justice Kahn's finding of procedural default concerning

Jiang's failure to investigate claim – that "this same argument was considered and rejected on the

merits by the First Department upon review of the same evidence defendant presents here"

(Steward Decl. (Dkt. No. 9), Ex. T (Order denying CPL §§ 440.10 and 440.20 motions) at 15

(emphasis added)) – is clearly erroneous. Because neither the judge who denied the CPL §

330.30 motion nor the First Department considered the Mo documents and Powell notes, Justice

Kahn could have considered these documents in the context of a CPL § 440.10 motion. See,

e.g., McCollough v. Bennett, No. 02-CV-5230, 2010 WL 114253, at *6 (E.D.N.Y. Jan. 12, 2010)

("When such claims are based on matters outside the record, and not reviewable on direct appeal,

New York law requires that they 'be pursued by way of a CPL § 440.10 motion.'" (quoting

Quinones v. Miller, No. 01 Civ. 10752 (WHP) (AJP), 2003 WL 21276429, at *21 (S.D.N.Y.

June 3, 2003), report and recommendation adopted, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005),

aff'd, 224 F. App'x 44 (2d Cir. 2007))).

        However, this factual inaccuracy does not mean that Justice Kahn lacked a basis

for finding that Jiang's failure to investigate claim was procedurally barred. Both CPL

§§ 440.10(2)(a) and 440.10(3)(b) apply when the "ground or issue raised upon the motion was

previously determined on the merits." CPL § 440.10(2)(a); CPL § 440.10(3)(b). Thus, Jiang's

objection to Judge Netburn's R & R – that "[t]he proof submitted on the C.P.L. § 440.10

[motion] varied significantly from the C.P.L. § 330.30 motion and the direct appeal"

(Petitioner's Objections (Dkt. No. 24) ¶ 7) – is immaterial. Since the state courts entertaining the

CPL § 330.30 motion and the direct appeal both made a determination on the merits with regard

to Jiang's failure to investigate claim (R & R (Dkt. No. 22) at 29-30) – i.e., the same "ground or

issued raised upon [Jiang's § 440.10 motion]" – Justice Kahn's invocation of the CPL §§

42

440.10(2)(a) and 440.10(3)(b) procedural bars was proper. Moreover, neither Justice Wetzel's merits determinations nor the First Department's merits determinations are undermined simply because Jiang was not permitted to enlarge the record with the Mo documents and the Powell notes. Both Justice Wetzel and the First Department found persuasive evidence contradicting Jiang's claims, including "[his] trial counsel's detailed affirmation, the record of the trial and pretrial proceedings, and the court's own recollection." People v. Ai Jiang, 62 A.D.3d 515, 516 (1st Dept. 2009); see also Steward Decl. (Dkt. No. 9), Ex. D (Order denying CPL § 330.30 motion) at 3 (noting "Powell provided a detailed report of her investigation efforts and meetings with witnesses which completely refutes the defendant's assertions to the contrary").

Despite the existence of these procedural bars, this Court has considered Jiang's failure to investigate claim on its merits, given the unusual circumstances here. First, as noted above, Justice Kahn erroneously believed that Justice Wetzel had considered the Mo documents and Powell notes in ruling on Jiang's CPL § 330.30 motion. Second, district courts disagree as to whether or not these state procedural bars preclude habeas review. Third, an ambiguity exists in the Supreme Court's denial of Jiang's CPL § 440.10 motion, insofar as Justice Kahn relied on both procedural and substantive grounds in rejecting Jiang's failure to investigate claim. Given this record, it is appropriate for this Court to "hurdl[e] the procedural questions to reach the merits of [Jiang's] petition," because his underlying claim is "easily resolvable . . . whereas the procedural-bar issue involve[s] complicated issues of state law." Dunham v. Travis, 313 F.3d 724, 729-30 (2d Cir. 2002) (quoting Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). Finally, Respondent has not argued that Jiang's failure to investigate claim is procedurally defaulted.[7]

---

[7] This Court is, of course, obligated to consider sua sponte the issue of procedural default. See Mitchell v. Miller, No. 08 Civ. 8495 (NRB), 2009 WL 2924310, at *5 n.12 (S.D.N.Y. Sept. 10, 2009) (noting that "[t]he Second Circuit has held that a district court should raise a procedural

Turning to the merits of Jiang's claim, under <u>Strickland</u>'s first prong, this Court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. The Supreme Court has held that "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) (quoting <u>Strickland</u>, 466 U.S. at 690-91). As to the second prong, the question is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

Here, Jiang has presented evidence that (1) Powell knew from her June 6, 2005 conversation with Hugh Mo that Yong had pled guilty to assault in connection with the February Incident; (2) Powell learned from her conversation with Mr. Mo that an "immigration hold" had been placed on Yong; (3) Powell was aware, by at least October 25, 2005 when she spoke to Wu – Yong's wife – that Yong might have exculpatory testimony to offer in Jiang's defense; and (4) Yong was not deported until December 2005. While one can surmise strategic reasons for not <u>calling</u> Yong as a witness – including the fact that his veracity was open to attack as a convicted felon, a participant in a vicious crime, and Jiang's friend – there is no apparent strategic reason why defense counsel would not have <u>interviewed</u> him. Put another way, Powell would have needed to interview Yong to make an informed decision about whether his testimony would be helpful to Jiang.

---

default issue <u>sua sponte</u> unless one of four exceptions applies to the circumstances of the habeas petition," none of which apply in the present case (citing <u>Washington v. James</u>, 996 F.2d 1442, 1451 (2d Cir. 1993))).

It is not necessary for this Court to determine whether Powell's failure to interview and call Yong and other witnesses at trial constitutes deficient performance, however, because Jiang has not demonstrated prejudice. First, Jiang has not offered any evidence that Yong was prepared to give testimony fully exculpating Jiang from any involvement in the February Incident. The most that can be said is that Wu averred that she told Powell "in around October of 2005 that [Yong] was willing to testify on behalf of Ai Jiang, but that he was in Immigration custody and would soon be deported." (Steward Decl. (Dkt. No. 9), Ex. D (Wu Aff.) to Ex. A (Cohen Aff.) ¶ 2) This vague statement does not demonstrate that Yong would testify that Jiang had no involvement in the attack. Second, even assuming arguendo that Yong was prepared to give such testimony, there is no reason to believe that the jury would have credited it. Both victims of the attack separately identified Jiang in a police lineup as one of the perpetrators of the February Incident. Both victims likewise identified Jiang at trial and gave credible testimony that he had attacked them. Third, given his friendship with Jiang, Yong had a motive to lie. And finally, given that Yong had already pleaded guilty, had been sentenced, and was scheduled to be deported, he could exculpate Jiang at no cost to himself. Yong's credibility was also subject to significant attack, given that he was a convicted felon and an admitted participant in the February assault and attempted murder, which was a vicious crime. For all of these reasons, this Court concludes that Jiang has not demonstrated that he was prejudiced by Powell's failure to interview and call Yong as a witness.

Insofar as Jiang's ineffective assistance claim is predicated on Powell's failure to call other witnesses, that argument also fails. First, Jiang has not sufficiently controverted Powell's assertion that neither Jiang nor his wife ever gave her the contact information for additional exculpatory witnesses. The affidavits of Qiu Xin Qin and Xue Dexing merely state

45

that each told <u>Jiang's wife</u> that they were willing to testify that Jiang was not present during the February Incident. There is no indication in Jiang's wife's affidavit, however, that she gave Powell sufficient information to contact these witnesses or even gave her their full names. There is likewise no evidence that Jiang gave Powell this information. Finally, while defense counsel states in his affidavit that Chen Hua and Gong Ching Yu had witnessed the November 3, 2004 attack and were willing to testify on Jiang's behalf, counsel has not submitted affidavits from the witnesses themselves. Even assuming <u>arguendo</u> that Powell was ineffective in not locating these witnesses, Jiang has not demonstrated prejudice for all of the reasons outlined above. Moreover, the testimony of these witnesses would have been duplicative. As to the February Incident, Yong's wife testified at trial that it was Yong who had been attacked by the victims, and that Jiang was not present. (Tr. 295-306)[8] As to the November Incident, Powell offered the testimony of Dong Wen Jing, Jiang's friend, who testified that Weng had attacked Jiang with a cleaver. (<u>Id.</u> at 321-22, 326-27) Given the overwhelming evidence of Jiang's guilt, there is no reason to think that calling one or two additional witnesses to offer duplicative testimony would have changed the outcome of the trial.

Jiang is likewise not entitled to a <u>Sparman</u> hearing. "A <u>Sparman</u> hearing is necessary before a court grants a petition for <u>habeas</u> relief based upon ineffective counsel, but not before a court denies such a claim." <u>Hernandez v. Larkin</u>, No. 12 Civ. 8090 (AJN) (SN), 2013 WL 4453316 (S.D.N.Y. Aug. 19, 2013). Because Powell's purported failure to investigate potentially exculpatory witnesses does not provide a basis for granting Jiang's petition, his request for a <u>Sparman</u> hearing will be denied.

---

[8] Wu's credibility, of course, was significantly undermined by her admission that Yong had pled guilty to the February assault. (<u>See</u> Tr. 312)

### d.   Cumulative Error

Finally, Jiang contends that all of Powell's purported errors, when viewed in the aggregate, amount to a denial of his constitutional right to counsel. Jiang also complains that Judge Netburn "found that the individual errors [of counsel] did not prejudice [him]," but did not consider Jiang's argument that "cumulatively . . . he has demonstrated that he was prejudiced." (Petitioner's Objections (Dkt. No. 24) ¶ 5)

It is true that Judge Netburn did not explicitly address Jiang's cumulative error claim. However, this Court concludes that Jiang did not fairly present this claim to the state courts, and therefore he has not exhausted his remedies as is required under the AEDPA. See 28 U.S.C. § 2254(b)(1). Although Jiang raised a version of his "cumulative error" claim in his brief on direct appeal, the First Department did not rule on the merits of that claim, because it was not properly before that court. Because this claim concerned matters outside the record, CPL § 440.10 is the proper vehicle for raising it.

The New York Court of Appeals has explained that

> C.P.L. § 440.10 motions to vacate a judgment are the usual vehicles for post-conviction ineffective assistance of counsel claims. The New York Court of Appeals has stated that "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of [trial] counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under CPL 440.10," since ineffectiveness of counsel is usually not demonstrable on the trial record.

Rosario v. Bennett, No. 01 Civ. 7142 (RMB) (AJ), 2002 WL 31852827, at *19 n.27 (S.D.N.Y. Dec. 20, 2002) (quoting People v. Brown, 45 N.Y.2d 852, 853-54 (1978)).

Jiang did not raise his "cumulative errors" argument in his CPL § 440.10 motion, however. Because "[t]here is no time limit on bringing a § 440.10 petition," Jiang "could return to state court to exhaust this claim." Harris v. Phillips, No. 05-CV-2870 (RRM), 2013 WL 1290790, at *6 (E.D.N.Y. Mar. 28, 2013) (citing CPL § 440.10(1) (noting that a motion to vacate

47

may be made "[a]t any time after the entry of judgment")). Accordingly, Jiang's cumulative errors claim is neither exhausted nor procedurally barred.[9]

In sum, before seeking habeas relief based on his "cumulative errors" argument, Jiang must return to state court to file a second CPL § 440.10 motion seeking to vacate his conviction on the grounds that the cumulative errors of trial counsel deprived him of effective assistance. See Rhines v. Weber, 544 U.S. 269, 273 (2005) ("[T]he interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." (citing Rose v. Lundy, 455 U.S. 509, 518-19 (1982))).  Because no state court has considered all of the evidence Jiang has proffered – including Powell's handwritten notes and the faxed documents from Hugh Mo – this Court declines to rule on Jiang's cumulative error claim.[10]

## B.      Ineffective Assistance of Appellate Counsel Claim

In his Petition, Jiang argues that his appellate counsel was ineffective because he (1) did not raise trial counsel's purported failure to seek a jury instruction on intoxication; (2) did not challenge the trial court's decision not to give a requested alibi instruction; and (3) committed numerous procedural errors.  Because Jiang did not object to this portion of the R & R, this Court reviews Judge Netburn's findings and recommendation for clear error.

---

[9]  Under CPL § 440.10(3)(c), the court may dismiss a motion to vacate where the movant "was [previously] in a position adequately to raise the ground or issue underlying the present motion but did not do so."  CPL § 440.10(3)(c).  This Court cannot presume that the state court will deny Jiang's motion on this ground.  Moreover, CPL § 440.10(3)(c) is merely a permissive bar, and a court "in the interest of justice and for good cause shown . . . [may] grant the motion if it is otherwise meritorious and vacate the judgment."  Id.

[10]  District courts have the authority under 28 U.S.C. § 2254(b)(2) to deny habeas petitions containing unexhausted claims on the merits.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").  Under the circumstances of this case, this Court declines to exercise that discretion here.

In considering Jiang's ineffective assistance of appellate counsel claim, Judge Netburn correctly applied the two-part test set forth in Strickland. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel.").

This Court concludes that appellate counsel was not constitutionally ineffective. With respect to the jury instruction on intoxication, Judge Netburn correctly concluded that appellate counsel did not err in failing to raise this claim, because an intoxication defense would have undermined Jiang's self-defense argument, which was premised on the notion that Weng attacked Jiang, and that Jiang was forced to use a knife to defend himself. (R & R (Dkt. No. 22) at 38) Counsel likewise did not err in failing to appeal the trial court's rejection of Jiang's requested alibi instruction. As Judge Netburn noted, "[u]nder New York law, lack of an explicit instruction will not require reversal if the other jury instructions, 'as a whole convey[] the necessary information regarding the [prosecution's] burden of proof.'" (Id. at 40 (quoting People v. Warren, 76 N.Y.2d 773, 775 (1990)) Here, Jiang has not argued that the trial court failed to inform the jury that it must find that the People proved Jiang's guilt beyond a reasonable doubt. To the contrary, the trial court "referenced the correct burden of proof," "emphasized that the burden never shifts to the defendant," and "also emphasized that the defendant's testimony did not shift the burden." (Id. at 41 (citing Tr. 465-66)) Thus, any error in omitting the requested alibi instruction was necessarily harmless and not a fruitful avenue for appeal.

Finally, any procedural errors that appellate counsel committed were also harmless. As Judge Netburn explained,

[i]n order for these errors to be cognizable on habeas review . . . there must have been a constitutional violation. The only possibility is that Jiang claims that the errors denied him his Fifth Amendment due process in his appeals.

Such violation did not occur. Despite appellate counsel's numerous procedural errors, Jiang received the merits review to which he was entitled. Each court to examine the claim addressed the argument on the merits, either deciding that Jiang was not sufficiently prejudiced or that trial counsel's decisions were strategic and reasonable.

(R & R (Dkt. No. 22) at 45)

In sum, this Court finds no clear error in Judge Netburn's determination that

Jiang's ineffective assistance of appellate counsel claim is meritless.

## C.    **Improper Joinder Claim**

Jiang also contends that the joinder of his indictments and the trial court's failure

to provide proper limiting instructions deprived him of a fair trial. Judge Netburn recommends

denial of this claim on the ground that it is exhausted but procedurally defaulted. Jiang does not

object to this portion of the R & R; accordingly, this Court will review the recommendation for

clear error.

Jiang raised the improper joinder argument on direct appeal. However, in doing

so he relied on two state cases, People v. Montgomery, 22 A.D.3d 960 (3rd Dept. 2005), and

People v. Greene, 306 A.D.2d 639 (3rd Dept. 2003). As Judge Netburn noted in her R & R,

"[n]either case relies on federal constitutional principles or employs constitutional analysis."

(R & R (Dkt. No. 22) at 12)  In any event, the Supreme Court has stated that "[i]mproper joinder

does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a

constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth

Amendment right to a fair trial.'"  United States v. Lane, 474 U.S. 438, 446 n.8 (1986).  In sum,

although Jiang raised the joinder issue in his direct appeal, he did not apprise the First

Department that the alleged misjoinder violated his federal constitutional rights.  Even if such an

50

argument had been made, Jiang has not demonstrated that the alleged misjoinder deprived him of a fair trial.

Although Jiang has not exhausted his misjoinder claim, because he no longer has "remedies available in the courts of the State," this Court may deem the claim exhausted but procedurally defaulted. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991); see also 28 U.S.C. § 2254(b)(2). As Jiang did not establish (1) either cause for or prejudice resulting from his failure to raise the claim on direct appeal, or (2) that this Court's failure to consider the issue would result in a "fundamental miscarriage of justice," Coleman v. Thompson, 501 U.S. 722, 750 (1991), Judge Netburn recommended that this claim be denied. (R & R (Dkt. No. 22) at 17)

Having fully reviewed this aspect of Judge Netburn's R & R, this Court finds no error therein and accordingly adopts Judge Netburn's recommendation that Jiang's improper joinder claim be denied.

## CONCLUSION

For the reasons set forth above, this Court adopts Judge Netburn's recommendation that Jiang's petition for a writ of habeas corpus (Dkt. No. 1) be denied with prejudice, except insofar as Jiang seeks relief on the basis of trial counsel's cumulative errors. That claim is dismissed without prejudice. The Clerk of Court is directed to close this case. Any pending motions should be terminated as moot. The Clerk of Court is further directed to mail a copy of this order by certified mail to pro se Petitioner Ai Jiang, DIN# 06-A-4500, Eastern Correctional Facility, P.O. Box 338, Napanoch, NY 12458.

Dated: New York, New York
     April 28, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge